IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT M. LYDEN**,

        Plaintiff,

    v.

**adidas AMERICA, INC.,** a Delaware corporation, **adidas AG,** a German entity, **adidas INTERNATIONAL MARKETING B.V.,** a Dutch entity, **THE FINISH LINE INC.,** an Indiana corporation, **FOOT LOCKER, INC.,** a New York corporation, and **DICK'S SPORTING GOODS, INC.,** a Delaware corporation,

        Defendants.

No. 3:14-cv-01586-MO

OPINION AND ORDER

**MOSMAN, J.**,

On October 10, 2014, Plaintiff Robert Lyden filed a complaint alleging Defendants had violated his intellectual property rights relating to his Springshoe design. Claims 1-6 are based on trademark rights Mr. Lyden claims to own. Claims 7-9 are based on patent rights Mr. Lyden claims to own.

On December 22, 2014, Defendants filed a Motion to Dismiss Claims 1-6 [24]. Defendants argue Mr. Lyden has failed to properly plead he ever owned the trademark rights he now claims. In the alternative, Defendants argue Mr. Lyden has since abandoned any trademark rights he might have held in the past. Finally, to the extent Mr. Lyden still owns any valid trademark rights, Defendants argue Mr. Lyden's Claims 5-6 for dilution fail because he cannot meet the "fame" requirement of the federal Trademark Dilution Revision Act. In addition to

1 – OPINION AND ORDER

these arguments for dismissal, Defendants have asked for a stay of any deadline to respond to Claims 7-9 until the resolution of this motion.

## LEGAL STANDARD

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. US. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

These standards are tempered somewhat when the plaintiff is proceeding *pro se*. "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (noting the *Iqbal* and *Twombly* pleading standards "did not alter courts' treatment of *pro se* filings"; joining "the five other circuits that have determined that *pro se* complaints should continue to be liberally construed after *Iqbal*").

"[A] fundamental principle of trademark law [is]: Registration does not create a mark or confer ownership; only use in the marketplace can establish a mark." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006). In addition, unlike registration on the Principal Register, registration on the Supplemental Register does not constitute prima facie evidence of the validity of a trademark. *See* 15 U.S.C. §§1057(b), 1094, 1115.

To establish protectable rights in a trademark, the plaintiff must prove continuous "use in commerce." The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve the right in a mark." 15 U.S.C. § 1127. A mark is considered to be used in commerce when the good to which it is affixed is sold or transported in interstate commerce. *Id.* "A mark 'is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner.'" *Matrix Motor Co., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 120 Fed. Appx. 30, 31 (9th Cir. 2005) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999). In other words, "[o]ne . . . may not 'own' a trademark unless one uses the mark as a designation of origin on or in connection with goods or services made or furnished by or under one's control." *Aini v. Sun Taiyang Co ., Ltd.*, 964 F. Supp. 762, 773 (S.D.N.Y. 1997).

## RELEVANT FACTS

Mr. Lyden owns Registration Nos. 3,629,011 and 3,633,365 on the Supplemental Register of the U.S. Patent and Trademark Office ("USPTO"). Supplemental Registration No. 3,629,011 states that "[t]he mark consists of a heel counter and spring element in the rearfoot area of footwear." Pl.'s Compl. [1-1] at 36. Supplemental Registration No. 3,633,365 states that "[t]he mark consists of a spring element in the rearfoot area of footwear." *Id.* at 40. Mr. Lyden submitted the following drawings in support of his applications to obtain these registrations:

3 – OPINION AND ORDER

 

*Id.* at 35, 38. Mr. Lyden refers to these registrations collectively as the "Springshoe Marks." Although Mr. Lyden has never tried to sell his Springshoe to the general public, Mr. Lyden claims that he has offered to license or sell his footwear patents and Springshoe Marks to existing companies in the footwear industry many times over the past decade. Pl.'s Compl. [1] at 23, 27. Mr. Lyden claims to have had fairly in-depth negotiations with Fila, Inc. in 2001 and DashAmerica, Inc. in 2007 regarding licensing deals to market and sell the Springshoe design. Pl.'s Response [26] at 8–9. Each of those deals, however, ultimately fell apart. *Id.* Mr. Lyden also claims to have entered into an Intellectual Property and Prototype Agreement with Nike, Inc. in 2002 in which Nike paid Mr. Lyden and his partners $300,000 in return for about a dozen Springshoe prototypes that Nike would never have to return. *Id.* Mr. Lyden also claims to have attempted to sell his Springshoe intellectual property to adidas and other companies in the footwear industry in 2014. Pl.'s Compl. [1] at 27. Mr. Lyden believes that as a result of these efforts to license or sell the Springshoe Marks, he "has built up and now owns valuable goodwill that is symbolized by the mark" and that "members of the footwear industry and the public have come to associate the Springshoe Marks with [him]." Pl.'s Compl. at 28.

## ANALYSIS

### I. Validity of Mr. Lyden's Trademark Rights

Defendants' Motion to Dismiss Claims 1-6 should be granted, but Mr. Lyden will be given leave to amend his complaint. Although Mr. Lyden's briefing in opposition of this motion

states facts sufficient to meet the pleading standards of FRCP 8, those facts are not contained in his complaint. Therefore, Mr. Lyden has failed to plead the necessary facts to establish that he had any valid trademark rights over the Springshoe Marks.

As the statutory text makes clear, Mr. Lyden's supplemental registrations do not constitute prima facie evidence of trademark validity. *See* 15 U.S.C. §§1057(b), 1094, 1115. In order to establish any rights in the Springshoe Marks, Mr. Lyden must be able to plead that he used the marks as a trademark in commerce. *See Miller*, 454 F.3d at 979.

The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof [used by a person] . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The key characteristic being that the mark is used as a "designation of origin." *Aini*, 964 F. Supp. at 773. If anything, Mr. Lyden's Springshoe Mark is unique. I believe that Mr. Lyden's Springshoe Marks did serve "to identify and distinguish his . . . goods . . . from those manufactured or sold by others and to indicate the source of the goods," even though a member of the general public, or even a company in the footwear industry, may not have been able to identify Mr. Lyden as the source of the good. 15 U.S.C. § 1127.

However, it is not enough for a mark to be unique or to designate origin; the mark must also be used in commerce. The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* Mr. Lyden's briefing contains several examples that plausibly satisfy this requirement. Although never finalized, Mr. Lyden's negotiated deals with Fila, Inc. and DashAmerica, Inc. plausibly satisfy the use in commerce requirement. *See Dept. of Parks and Rec. for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) ("[A]dvertising combined with other non-

5 – OPINION AND ORDER

sales activity, under our 'totality of the circumstances test,' . . . can constitute prior use in commerce."); *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) ("Actual sale is not necessary.") (internal citations omitted); *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir. 1951) ("It seems to us that although evidence of sales is highly persuasive, the question of use adequate to establish appropriation remains one to be decided on the facts of each case, and that evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership, even without evidence of actual sales."). In addition, Mr. Lyden's 2002 Intellectual Property and Prototype Agreement with Nike, Inc. looks a lot like a sale of goods bearing the mark, and therefore may also plausibly satisfy the use in commerce requirement. Defendants make much of the fact that Mr. Lyden has never marketed or offered for sale his Springshoe design to the general public. It is not at all clear that this is required to establish rights in the mark. Many cases hold that the mark only needs to be used in an appropriate segment of the public. *See, e.g., Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) ("[R]equiring usage as 'to identify or distinguish the marked goods in an appropriate segment of the public mind . . .'") (quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999)). It is plausible to assert that the relevant segment of the public here is the footwear industry. At this stage of the litigation, I think that it would be inappropriate to dismiss these claims on the grounds that the use of the mark was not sufficiently public. The problem, however, is that none of these facts are contained in the complaint. In order to plausibly state a claim upon which relief can be granted, Mr. Lyden needs to add these facts to his complaint.

Defendants also argue that even if Mr. Lyden at one point established rights in the Springshoe Marks, he abandoned those rights in 2010. The Lanham Act section on abandonment states, "A mark shall be deemed to be 'abandoned' if . . . its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. Defendants argue the last time Mr. Lyden used the Springshoe Marks was in a 2010 business plan that was never sent to anyone, and therefore there is prima facie evidence that Mr. Lyden abandoned his rights to the Springshoe Marks in 2010. In his complaint, however, Mr. Lyden states that he has used the marks in offers to license or sell the Springshoe Marks numerous times over the last decade, including in 2014. Pl.'s Compl. [1] at 27. If this is true, Mr. Lyden would lack the requisite intent for abandonment, and the prima facie case of abandonment would not be established because there has never been a three year period of nonuse. The problem, however, is that the complaint contains no facts to support the assertion that the mark has been used since 2010. In order to state trademark claims upon which relief can be granted, Mr. Lyden's amended complaint must include facts that establish use of the marks between 2010 and the present, such that his rights in the marks were never abandoned.

For the foregoing reasons, Mr. Lyden's Claims 1-6 should be dismissed. Mr. Lyden, however, will be given an opportunity to amend his complaint. If Mr. Lyden adds the factual content described above to his complaint, he will have stated trademark claims that comply with the pleading standards of FRCP 8.

## II. Trademark Dilution Claims

Defendants also argue that even if Mr. Lyden has established protectable rights in the Springshoe Marks, claims 5-6 for trademark dilution fail because Mr. Lyden has failed to plead sufficient facts to satisfy the fame element of those claims. "[A] mark is famous if it is widely

7 – OPINION AND ORDER

recognized by the general consuming public of the United States as a designation of source of the goods of service of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In assessing whether a mark is famous, the federal Trademark Dilution Revision Act ("TDRA") outlines several factors for assessing fame: "(i) the duration, extent, and geographic reach of advertising and publicity of the mark . . .; (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) The extent of actual recognition of the mark; [and] (iv) Whether the mark was registered . . . on the principal register." *Id.* Courts trying to determine whether or not a mark is famous have held that "[t]his is a rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country." *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007); *see also Bd. Of Regents, Univ. of Texas v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008) (Fame is "reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value.")

    Mr. Lyden's response and sur-reply fail to raise any valid counter arguments to Defendants' arguments. Mr. Lyden spends most of his time arguing that the fame standard is unfair or anti-competitive. Whether or not that is true is not a matter this court can decide. Mr. Lyden has failed to make any valid arguments that his Springshoe Marks are widely recognized by the general consuming public. All attempts to use his marks in commerce have been to the niche market of companies in the footwear industry—not the general consuming public. Because Mr. Lyden has failed to raise any valid counter arguments to dismissal, I find that any attempt to amend his complaint regarding these claims would be futile, and therefore I dismiss Claims 5 and 6 with prejudice.

### III.   Stay of Deadline to Answer Claims 7-9

I agree with the legal precedent cited by Defendants, and therefore find it appropriate to grant Defendants an extension of time to answer the unchallenged claims in Mr. Lyden's complaint. *See, e.g., Talbot v. Sentinel Ins. Co.*, No. 2:11-CV-01766-KJD-CWH, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (collecting cases); *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC*, No. CIV-05-2832-PHX MHM, 2006 WL 1441014, at *7 (D. Ariz. May 24, 2006); *Batdorf v. Trans Union*, No. C 00-0501 CRB, 2000 WL 635455, at *5 (N.D. Cal. May 8, 2000). Defendants are ordered to file their answer to Claims 7-9 when they respond to Mr. Lyden's amended complaint.

### CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss [24] is GRANTED. Mr. Lyden's Claims 1-4 are DISMISSED without prejudice. Mr. Lyden has failed to plead sufficient facts to establish the trademark rights he now claims. Mr. Lyden has fourteen days from the entry of this Opinion and Order to file an amended complaint. Mr. Lyden's Claims 5-6 are DISMISSED with prejudice because I have determined that any attempt to amend those claims will be futile.

Defendants' request for a stay in answering Claims 7-9 is GRANTED. Defendants will file an answer to Claims 7-9 when they respond to Mr. Lyden's amended complaint.

IT IS SO ORDERED.

DATED this   10th   day of February, 2015.

/s/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge