IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT M. LYDEN**,

                Plaintiff,

      v.

**adidas AMERICA, INC.,** a Delaware
corporation, **adidas AG,** a German entity,
**adidas INTERNATIONAL MARKETING
B.V.,** a Dutch entity, **THE FINISH LINE
INC.,** an Indiana corporation, **FOOT LOCKER,
INC.,** a New York corporation, and **DICK'S
SPORTING GOODS, INC.,** a Delaware
corporation,

                Defendants.

No. 3:14-cv-01586-MO

OPINION AND ORDER

**MOSMAN, J.**,

On January 14, 2015, Plaintiff Robert Lyden filed a Motion for Preliminary Injunction

[30]. Mr. Lyden seeks to enjoin Defendants and their officers, directors, employees, agents,

affiliates, divisions, branches, subsidiaries and all others acting in concert with Defendants or on

their behalf from making, using, or selling the infringing adidas shoes, and in particular, the

adidas Springblade shoes, in the United States.

1 – OPINION AND ORDER

## LEGAL STANDARD

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (internal quotation marks omitted) (reversing preliminary injunction); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *World Class Tech. Corp. v. Ormco Corp.*, 964 F. Supp. 2d 1273, 1277 (D. Or. 2013) (denying purported patent owner's motion for preliminary injunction).

## ANALYSIS

### I.    Likelihood of Success on the Merits

#### A.    *Trademark Claims*

With respect to Mr. Lyden's trademark claims, there are serious questions regarding whether or not Mr. Lyden has any enforceable trademark rights. It is unclear whether or not Mr. Lyden's purported uses of the claimed marks in commerce are sufficient to establish protectable interests in the mark. As discussed in my Opinion and Order [60], Mr. Lyden has only ever tried to market and sell his Springshoes to companies in the footwear industry; he has never marketed or sold them to the general public. In addition, the only sales of the Springshoe were in connection with a 2002 Intellectual Property and Prototype Agreement with Nike, Inc., and only about a dozen pairs were sold. Given the current state of the law, it is unclear whether or not these actions constitute a prior "use in commerce" sufficient to create protectable rights in the

Springshoe marks. *See* 15 U.S.C. § 1127. Although it is certainly possible that Mr. Lyden will win on the merits, he has failed to show that it is likely he will win, and therefore this factor weighs against Mr. Lyden's request for a permanent injunction with respect to his trademark claims.

      **B.**     *U.S. Patent No. 6,449,878*

With respect to the alleged infringement of patent No. 6,449,878 ("'878 patent"), Mr. Lyden has not shown he is likely to win on the merits. Defendants argue Mr. Lyden is not likely to win on the merits because the '878 patent's claims are indefinite and therefore the patent is invalid, and even if the claims were definite, the Springblade shoe lacks the claimed elements.

Claims 27 and 30 require a "transverse axis" for the "article of footwear" and a "transverse axis" for the "inferior spring element." U.S. Patent No. 6,449,878 claims 27, 30 (filed Sep. 17, 2002). The claims go on to require "greater concavity downwards adjacent *said transverse axis* on said medial side than on said lateral side." *Id.* (emphasis added). Defendants argue that the claims are indefinite because it is impossible to tell which transverse axis "said transverse axis" applies to. In the face of the ambiguity they allege, Defendants propose two potential interpretations of claims 27 and 30, and argue that the Springblade shoes fail to infringe either of those interpretations. Mr. Lyden argues that although the claims appear to refer to two separate transverse axes, they in fact are only referencing one transverse axis, and therefore the claims are not indefinite. Mr. Lyden then applies his interpretation of the claims, and argues that the Springblade shoe embodies each claim of the '878 patent, thus infringing it.

At this stage, it is unclear which party's interpretation of the claims is correct. Both sides make valid arguments in favor of their respective interpretations—neither position is without

merit. I am not yet in a position to be able to choose between the parties' competing claim constructions. I believe making that choice would be premature without the benefit of a Markman hearing, and the accompanying briefing. I believe that claims 27 and 30 are sufficiently vague at this stage such that Mr. Lyden has failed to show that he is likely to win on the merits with respect to his '878 patent infringement claim.

### C.    *U.S. Patent No. 8,209,883*

With respect to the alleged infringement of patent No. 8,209,883 ("'883 patent"), Mr. Lyden has not shown he is likely to win on the merits. All of the claims of the '883 patent were rejected upon reexamination. *See* Roettig Decl. [52-3] at 1. Although the decision is on appeal to the Patent Trial and Appeal Board, I agree with Defendants' argument that this rejection raises a substantial question regarding the validity of the '883 patent. Given this substantial question of validity, Mr. Lyden has not shown that he is likely to win on the merits with respect to his '883 patent infringement claim.

### D.    *U.S. Design Patent No. D507,094*

With respect to the alleged infringement of design patent No. D507,094 ("'094 patent"), Mr. Lyden has not shown he is likely to win on the merits. The Federal Circuit has held that design patents are directed at the appearance of an article. *See PHG Tech.s v. St. John Co.s, Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006). When a design is primarily functional rather than ornamental, the patent is invalid. *Id.* Defendants argue that the '094 patent is primarily functional, and therefore invalid. Defendants compare the language in the '878 patent (a utility patent) to the design embodied in the '094 patent (a design patent), and argue that the similarities suggest that the '094 patent is based on a functional design rather than an ornamental one. This argument relies on the underlying assumption than an invention is either functional or

ornamental, but cannot be both. The United States Patent and Trademark Office's guide on

obtaining a design patent states: "Both design and utility patents may be obtained on an article if

the invention resides both in its utility and ornamental appearance." Design Patent Application

guide, United States Patent and Trademark Office, http://www.uspto.gov/patents-getting-

started/patent-basics/types-patent-applications/design-patent-application-guide (last visited Feb.

12, 2015). It is not enough just to show that a design is both functional and ornamental. In order

to invalidate a design patent, case law requires that the invention be *primarily* functional rather

than ornamental. *PHG Tech.s*, 469 F.3d at 1366. Although Defendants have shown that the

design is both functional and ornamental, they have failed at this time to show that the design is

primarily functional.

  In the alternative, Defendants argue that Mr. Lyden cannot prove their Springblade shoes

infringe the '094 patent. "In determining whether an accused product infringes a patented design,

[courts] apply the 'ordinary observer' test, that is, whether 'an ordinary observer, familiar with

the prior art designs, would be deceived into believing that the accused product is the same as the

patented design.'" *Anderson v. Kimberly-Clark Corp.*, 570 Fed.Appx. 927, 933 (Fed. Cir. 2014)

(internal citations omitted). Defendants argue that an ordinary observer would not be confused

for at least two reasons. First, the rear blade of Defendants' Springblade shoe contains a very

visible void or gap; Mr. Lyden's design patent shows no such void or gap. Second, when looking

straight on at the side of the Springblade shoe, neither the top nor the bottom of the rear blade is

visible; Mr. Lyden's design patent shows that the top and bottom of the rear blade should be

visible from such an angle. Defendants argue that these differences are sufficient such that "an

ordinary observer, familiar with the prior art designs, would [not] be deceived into believing that

the accused product is the same as the patented design." *Anderson*, 570 Fed.Appx. at 933. I

believe this to be a fairly persuasive argument against Mr. Lyden's claim of infringement. I therefore do not believe that Mr. Lyden has successfully shown that he is likely to win on the merits with respect to his '094 patent infringement claim.

## II.    Irreparable Harm

Mr. Lyden has failed to show that he is likely to suffer irreparable harm if a preliminary injunction is not issued. It is not enough to show that irreparable harm is possible, a movant seeking a preliminary injunction must show that irreparable harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Mr. Lyden argues that he will suffer irreparable harm from lost affection from time spent with his family while litigating this case, lost business opportunities, and harm to his reputation.

I do not find the time Mr. Lyden spends away from his family litigating this case to be irreparable harm. Mr. Lyden could recover nearly all of this time by hiring a lawyer to represent him in this case, and he could then seek to recover his attorney's fees as part of his recovery. Mr. Lyden, however, has chosen to represent himself, and therefore chosen to be away from his family. In any event, he has not made a sufficient showing that the time he spends on this litigation is time he would otherwise spend with is family, as opposed to other work.

Although lost business opportunities can at times be irreparable, Mr. Lyden has not made any arguments or produced any evidence to support his position that his lost business opportunities are irreparable. Rather, Mr. Lyden has merely recited legal conclusions that these alleged lost opportunities are irreparable. Lost business opportunities are often repaired through awards for lost profits and reasonable royalties related to the infringing or prohibited activities.

6 – OPINION AND ORDER

Mr. Lyden has failed to explain why such awards would be insufficient in this case. I therefore do not find Mr. Lyden's alleged lost business opportunities to be sources of irreparable harm.

Finally, Mr. Lyden argues that he is suffering reputational harm due to Defendants' alleged infringing activities and the alleged defamatory statements in Defendants' briefing in this case. Reputational harm can be a type of irreparable harm. However, reputational harm, particularly defamation, is also commonly remedied through money damages. Mr. Lyden has failed to explain or to produce evidence that suggests he is suffering the type of reputational harm that cannot be remedied through an award of money damages. I therefore do not find Mr. Lyden's alleged reputational harm to be a source of irreparable harm.

I therefore find that this factor weighs against the entry of a preliminary injunction. For the reasons stated above, Mr. Lyden has failed to either state or support any sources of irreparable harm resulting from Defendants' alleged illegal activities.

## III.    Balance of Equities

Given my findings above, the balance of equities weighs against the entry of an injunction. It would not be equitable to force Defendants to shut down a product line because it allegedly infringes on Mr. Lyden's patent when Mr. Lyden has failed to prove a likelihood of success on the merits, or a risk of irreparable injury. Mr. Lyden has not rebutted Defendants' assertion that issuing an injunction would disrupt their national distribution, marketing, advertising, and sales efforts. Defendants have shown that not issuing an injunction will likely not result in any harm to Mr. Lyden that cannot be remedied at a later date with an award of money damages. I therefore find that this factor weighs against the entry of a preliminary injunction.

## IV.    Public Interest

7 – OPINION AND ORDER

The public interest weighs against the entry of a preliminary injunction. Where a party has failed to show a likelihood of success on the merits, the public interest is harmed by the entry of a preliminary injunction. An injunction would remove products from the market that may have every right to be there. Removal of these products would stifle competition, and reduce the available options to consumers without a legitimate basis to do so. I therefore find that the public interest weighs against the entry of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Mr. Lyden's Motion for Preliminary Injunction [30] is DENIED. Mr. Lyden has failed to show that the four factors I am required to consider weigh in favor of entering a preliminary injunction.

IT IS SO ORDERED.

DATED this   20th   day of February, 2015.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge