IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT M. LYDEN**,

        Plaintiff,

  v.

**adidas AMERICA, INC.,** a Delaware corporation, **adidas AG,** a German entity, **adidas INTERNATIONAL MARKETING B.V.,** a Dutch entity, **THE FINISH LINE INC.,** an Indiana corporation, **FOOT LOCKER, INC.,** a New York corporation, and **DICK'S SPORTING GOODS, INC.,** a Delaware corporation,

        Defendants.

No. 3:14-cv-01586-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Defendants move for Summary Judgment on Plaintiff's Trademark Claims [180] and for Partial Summary Judgment on Plaintiff's Patent Claims [183]. For the reasons stated below, I GRANT Defendants' Motion for Summary Judgment on Plaintiff's Trademark Claims [180] and GRANT Defendants' Motion for Partial Summary Judgment on Plaintiff's Patent Claims [183].

    I.    Trademark Claims

    Defendants argue Mr. Lyden's trademarks are functional and thus cannot be protected by trademark law. In the alternative, Defendants argue the marks cannot be protected because they were not used in commerce. Because I find that the marks are functional, I do not reach the question of whether they were used in commerce.

        a.    Background

Mr. Lyden owns Registration Nos. 3,629,011 and 3,633,365 on the Supplemental Register of the U.S. Patent and Trademark Office ("USPTO"). Supplemental Registration No. 3,629,011 states that "[t]he mark consists of a heel counter and spring element in the rearfoot area of footwear." (Pl.'s Compl. [1-1] at 36.) Supplemental Registration No. 3,633,365 states that "[t]he mark consists of a spring element in the rearfoot area of footwear." (*Id.* at 40.) Mr. Lyden submitted the following drawings in support of his applications to obtain these registrations:

 

(*Id.* at 35, 38.) Mr. Lyden refers to these registrations collectively as the "Springshoe Marks."

b.  Legal Standard

"The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional[.]" *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir. 1989) (citing *Vuitton Et Fils S.A. v. J. Young Enters.*, 644 F.2d 769, 772 (9th Cir. 1981)). Were a product's functional features protected, then "a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever." *Qualtiex Co. v. Jacobson Prods.Co.,* 514 U.S. 159, 164-65 (1995).

Functionality is a question of fact on which the plaintiff in an infringement action bears the burden of proof. *Adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1202 (D. Or. 2002); *HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 696 (9th Cir. 1993).  A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-

reputation-related disadvantage." *Qualitex,* 514 U.S. at 165 (internal quotation and citation omitted).

"To determine whether a product feature is functional, we consider several factors: (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Assn'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998); *see also Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012).

    c.  Discussion

As required by the Ninth Circuit, I apply the factors outlined above to our case. Upon application, I have concluded the shoes are functional and cannot be protected by trademark law.

        i.  Utilitarian Advantage

The first factor I must consider is whether the design yields a utilitarian advantage. "[T]he existence of [a] . . . utility patent is weighty evidence of functionality, although that fact alone is not dispositive." *Disc Golf Ass'n, Inc*, 158 F.3d at 1006 (9th Cir. 1998) (citations ommitted) (holding that an expired utility patent provided strong evidence of functionality). A utility patent must be examined closely to ensure that the disclosure of the configuration is primarily functional and not merely incidental. J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:89, at 7–207 (4th ed. 1998).

Mr. Lyden's spring and heel counter are the subject of both his marks and his patents, providing strong evidence that they are functional and thus inappropriate for trademark protection. In addition to the mere existence of the patents, the language Mr. Lyden uses in the patent underscores the idea that these designs are functional. The '365 registration claims a "spring element in the rearfoot area of footwear." (Pl.'s Compl. [1-1] at 36.) The '878 patent

3 – OPINION AND ORDER

shows clear functionality of that same spring element when it states "the article of footwear includes a spring element *which can provide improved cushioning, stability, running economy, and a long service life.*" ([181-3] Vanderhoff Dec. at 1 (emphasis added)).  The heel counter and spring element which are the subject of the '011 Trademark registration overlap with the '797 patent. The '797 patent is less explicit than the '878 patent about the benefits of a heel counter, but it touts the "selectively removable and replaceable" parts of the heel which represent the "utilitarian benefit" of Mr. Lyden's design because it created an "article of footwear which represents an investment as opposed to a disposable commodity" ([156-2] Roettig Decl. Ex. B at 237; 231.)  The utilitarian advantage factor cuts strongly in favor of Defendants.

       ii. Whether alternative designs are available

  The next factor I must consider is whether alternative designs are available.  The absence of alternative designs supports a finding of nonfunctionality.  Although Defendants argue Mr. Lyden has not shown alternative designs that achieve the same utilitarian benefits, the patents themselves are replete with customizable options and the specifications of the patents offer different design options.  Defendants' better argument, substantially supported by case law in the Ninth Circuit, is that "the mere existence of alternatives does not render a product nonfunctional" *Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 604 (9th Cir. 2003). "Once functionality is established, [t]here is no need . . . to engage . . . in speculation about other design possibilities. . . ." *Id.* at 603.  Where, as here, there is strong evidence of functionality due to the existence of patents and the explanations included in patents, the existence of alternative designs is not dispositive.

       iii. Advertising which touts a utilitarian advantage

  The third factor I am to consider is whether there exists advertising which touts the utilitarian advantages of the design.  Defendants argue that while Mr. Lyden has no formal

4 – OPINION AND ORDER

advertisements, Mr. Lyden has given interviews which show functionality including quotations from him stating the shoe "is built around a . . . spring, which serves as a heel and shock absorber" which "returns more energy, better reduce[s] shock and provide[s] better stability" than more conventional running shoes. ([182] Chollet Decl., Ex. 13.) Mr. Lyden offers no evidence to dispute this. As such, this prong cuts in Defendants favor.

        iv.   Method of production

The final factor I must consider is whether the particular designs result from comparatively simple or inexpensive methods of manufacture. *Disc Golf*, 158 F.3d at 1009 ("a functional benefit may arise if the design achieves economies in manufacture or use") (citation and internal quotation marks omitted). On the record before me, there is little evidence on comparative cost of manufacture. Mr. Lyden submits some evidence of the cost to make the spring elements and heel counter. (*See* [190] Lyden Decl., Ex. 10.) However, he does little to show if it is "comparatively simple or inexpensive." He offers one page which he claims is evidence of Defendants' production of conventional shoes. (*See id.,* Ex. 5.) The page fails to clearly show the costs of the shoe or the component parts in a way that is comparable to Mr. Lyden's. It does not show Mr. Lyden's process is substantially more expensive. Plaintiff bears the burden of proof on proving nonfuctionality and he has not met it here.

Given the Plaintiff's burden of proof on the element of functionality, the existence of patents which overlap on the designs claims in Mr. Lyden's marks, and the statements given by Mr. Lyden to support the functionality of the designs, I find the marks are functional and grant Defendants' motion for summary judgment on the trademark claims.

II.    Patent Claims

In addition to their arguments against Mr. Lyden's trademarks, Defendants also challenge Mr. Lyden's patents. In their initial motion, Defendants argued both that Mr. Lyden lacks

5 – OPINION AND ORDER

standing to pursue his patent claims and that, in the alternative, Defendants did not infringe on Mr. Lyden's patents. As subsequent events developed, Defendants withdrew their standing argument. Accordingly, I address only the non-infringement argument and find Defendants did not infringe on Mr. Lyden's patents.

    a. Background

There are three patents at issue in the Defendants' motion: U.S. Patent Nos. 6,449,878 (the "'878 patent"); 8,959,797 (the "'797 patent"); and D507,094 (the "'094 design patent"). These patents form the basis for Mr. Lyden's seventh, ninth, and tenth claims alleging infringement and also serve as the basis for Defendant adidas's third counterclaim seeking a declaration of non-infringement. On November 6, 2015, I held a Markman hearing to construe certain terms at issue in this suit. Relevant to this motion, I defined the terms "anterior most side" to mean "the surface distinct from any other side or surface that is closest to the anterior side of the footwear" and the term "affixed" to mean "two separate components that are attached to and have some functional relationship with each other." (Markman Hearing Tr. [171].)

    b. Legal Standard

Infringement analysis is a two-step process. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) *aff'd,* 517 U.S. 370 (1996) (citations omitted). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

    c. Discussion

6 – OPINION AND ORDER

> i. '878 patent

Each part of the '878 patent at issue includes the phrase "said inferior spring element . . . affixed in functional relation to said superior spring element." At the Markman hearing, I held affixed to mean "two separate components that are attached to and have some functional relationship with each other." (Markman Hearing Tr. [171] at 46:14-15.) Thus the inferior and superior springs must be separate components. The adidas blades are never separate components as they are made in one mold. As such, there exist no separate components that can be "attached to and have some functional relationship with each other." (*Id.*) Mr. Lyden argues that I did not require the pieces to be separate. The language of my ruling suggests otherwise. (*Id.*)

Mr. Lyden argues that claims 27-30 refer to a spring element that is permanently affixed. Claims 27-30 use the same language of an "inferior spring element . . . affixed in functional relation to said superior spring element" as the claims he agrees are not permanently attached. (Roetigg Decl. [156-1] pg. 30 at 32:55.) Finally, Mr. Lyden argues even if adidas does make their inferior and superior springs in the same mold, the particles of matter are "affixed" to each other at some point in the process. While this may be elementally true, the result is nonsensical as it would obliterate any possibility of a "whole" piece ever being created. At the Markman hearing, I determined the meaning and scope of the patent by construing affixed to mean "two separate components that are attached to and have some functional relationship with each other." (Markman Hearing Tr. [171] at 46:14-15.) In the second step of the infringement analysis, I compare the adidas blades to the construed claim and find the adidas product does not have "two separate components." Thus, adidas's product does not infringe on Mr. Lyden's patent.

As an alternative, Mr. Lyden's response briefly invokes the "doctrine of equivalents." However, Mr. Lyden is barred as a matter of law from arguing the doctrine of equivalents because the doctrine cannot be applied to alternatives that were outlined in patent specifications.

7 – OPINION AND ORDER

"Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (quotation omitted).

In his claims, Mr. Lyden repeatedly used the word "affixed," which under my construction requires two separate parts. However, in his specification he noted "in an alternate embodiment, the [superior] anterior spring element and inferior spring element can consist of a single component." ('878 Patent 4:43-45.) In our case, as in *Johnson,* the proponent of the patent now attempts to invoke the doctrine of equivalents and apply it to the alleged infringer's product. Here, as in *Johnson,* the alleged infringer's product reflected an alternative that was outlined in the specifications but not included in the patent. Here, as in *Johnson,* such an argument is barred as a matter of law. The *Johnson* court held that the doctrine of equivalents could not be invoked because when a patent drafter outlines a subject in the specification but leaves it unclaimed he "dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'" *Johnson*, 285 F.3d at 1054 (citation omitted). Mr. Lyden, by outlining a subject in the specification, dedicated the subject matter to the public and waived any future argument under the doctrine of equivalents. Thus, the doctrine of equivalents cannot apply. I therefore grant Defendants' motion for summary judgment on the '878 patent

### i. '797 patent

Defendants argue the adidas shoe does not infringe on the '797 patent because all claims in the '797 patent require an inferior spring with an "anteriormost side," and Defendants' shoes, because they are made with the inferior springs fused to the superior springs, do not have an

8 – OPINION AND ORDER

"anteriormost side" to the inferior spring. At the Markman hearing, I defined "anteriormost side" as "a surface distinct from any other side or surface that is closes to the footwear's anterior side." (Markman Hearing Tr. [171] at 46:21.) Because of the fusion between the inferior and superior springs in the adidas shoe there is no "anterior side," distinct from any other side, of the inferior spring. I grant Defendants' motion for summary judgment on the '797 patent.

### ii.    '094 patent

The '094 patent is a design patent, issued for new, original, and ornamental designs. 35 U.S.C. § 171. The "ordinary observer" test is applied to determine if a design patent has been infringed. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). Under that test, infringement exists if "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Id.* The ordinary observer is assumed to be "giving such attention as a purchaser usually gives" and the patent is infringed if "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *St. Flyers LLC. v. Gen-X Sports, Inc.*, 2003 WL 21998960, at *14 (S.D.N.Y. Aug. 22, 2003) (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, (1871)).

The '094 design patent claims "the ornamental design for a spring element for an article of footwear as shown and described." ([184-3]; '094 Patent "Claim.") Defendants argue an ordinary observer would distinguish the adidas shoe from the '094 design on three grounds: 1) the twisted blade from the '094 design are not present in the adidas shoe; 2) the hole in the rear inferior spring element of the adidas shoe is not present in '094 design; and 3) the upward curved portion of the rear inferior spring element is symmetric in the adidas shoe, and asymmetric in the '094 design. The twisted blade design is Defendants' most convincing argument and provides a

sharp distinction between the two designs, enough so that an ordinary observer would not confuse the two.

1. Twisted blade

Adidas argues Mr. Lyden's patent can be distinguished from the adidas shoe because Mr. Lyden's design showns an inferior spring element that is twisted from neutral. With the adidas shoe, when the inferior spring is level with the eye, one cannot see the top or bottom surfaces of the inferior spring. In Mr. Lyden's patent, Figure 11 shows the spring is canted slightly so that one is able to see the top surface from one side and, as seen in Figure 12, one can see the bottom surface from the other side.



([184-3]; '094 Patent Fig. 11-12.)

In addition to the figures depicted in the '094 design patent, the language of the patent supports the argument. Mr. Lyden's patent describes Figure 11 as a "lateral side view of a modified spring element for an article of footwear **having asymmetrical curvature on the medial and lateral sides**, shown for a left foot." (*Id.* at Description Fig. 11 (emphasis added).) The asymmetric curvature is what allows the top and bottom surfaces of the spring to be shown. In his briefing, Mr. Lyden concedes "a small portion of the top and bottom surfaces of the inferior spring element can be seen from the medial and lateral sides" but argues they can only be seen by an ordinary observer who has "binocular vision." I disagree. The twisting of the blades is immediately apparent in the design when looking at a scaled-down drawing of the shoe.

It would be apparent to an ordinary observer looking at a larger, fully realized version of the shoe.  Any customer would note adidas's shoe has straight blades while Mr. Lyden's blades are canted.  Applying the "ordinary observer" test, I have determined an ordinary observer would be able to distinguish between the shoes and therefore adidas's shoe does not infringe on Mr. Lyden's '094 patent.

2. Posterior Inferior Spring Element Hole

The adidas shoe design includes a hole in the posteriormost inferior spring element at the center of the intersection between the interior and superior surfaces.  Defendants argue Mr. Lyden's design does not have this and thus adidas's design does not infringe.  Mr. Lyden points to Figure 3 in his patent which shows a hole but concedes it is not "part of the design."  Figure 3 shows the hole from the "bottom view."  In contrast, the hole in adidas's design is not visible from viewing the bottom of the shoes.

Mr. Lyden argues Defendants mischaracterize the drawings offered in their motion by showing only certain angles.  To supplement the drawings, I have referred to the full size adidas shoe Mr. Lyden himself provided.  Second, he argues that an ordinary observer would not see the hole because it is only visible at eye level and no ordinary observer is at eye level with the shoe.  Mr. Lyden misunderstands the hypothetical ordinary observer.  When comparing a design and the accused infringer the two designs are to be compared from similar angles that provide a comprehensive overview of the product.  *See Wallace v. Ideavillage Products Corp.*, 2016 WL 850860, at *2 (Fed. Cir. Mar. 3, 2016) (approving a district court's use of multiple angles of comparison).  Comparing the bottom view of Lyden's drawings to the bottom view of the adidas shoe, the differences in design related to the hole are easily discernable.  This design difference, in addition to the twisted blades discussed above, creates enough distinction between the two

11 – OPINION AND ORDER

designs that an ordinary observer would not mistake one for the other. Defendants' Motion for Partial Summary Judgment as to the '094 design patent is granted.

III.     Conclusion

For the reasons stated above, I GRANT Defendants' Motion for Summary Judgment on Plaintiff's Trademark Claims [180] and GRANT Defendants' Motion for Partial Summary Judgment on Plaintiff's Patent Claims [183]. Plaintiff's first, second, third, fourth, seventh, ninth and tenth claims are DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this  18th   day of April, 2016.

      /s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge

12 – OPINION AND ORDER